621 P.2d 1129

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**James T. McGEE, Jr.,
Defendant-Appellant.**

**No. 4706.**

Court of Appeals of New Mexico.

Dec. 11, 1980.

Hank Farrah, Hank Farrah and Associates, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

HENDLEY, Judge.

Convicted of one count of conspiracy to commit murder in the first degree, one count of attempted murder in the first degree, one count of attempted murder in the first degree with firearm enhancement, and one count of receiving stolen property contrary to §§ 30–28–2, 30–28–1, 30–2–1, 30–2–2, 30–1–13, 31–18–4 and 30–16–11, N.M.S.A. 1978, defendant appeals. He raises four issues on appeal: (1) whether the prosecution engaged in improper crossexamination of the defendant; (2) whether the prosecution failed to comply with N.M.R.Crim.P. 27, N.M.S.A.1978; (3) whether the trial court erred in not requiring the State to cooperate in securing the testimony of William Wayne Gilbert; and (4) whether the trial court erred in disallowing the testimony of Gilbert's attorneys.

*Improper Cross-Examination*

During cross-examination of the defendant, the prosecutor asked the following questions:

PROSECUTOR: When did you discover that perhaps you were not a federal agent?

DEFENDANT: The day I was arrested.

PROSECUTOR: Did you have the feeling that you had been mislead?

DEFENDANT: That's putting it mildly; yes, to answer your question.

PROSECUTOR: Did you have the feeling that the police had the wrong man?

DEFENDANT: Yes.

PROSECUTOR: Did you tell anyone about it?

DEFENDANT: Yes.

PROSECUTOR: Who?

DEFENDANT: Mr. Kurt Lohbeck. The day I was arraigned I ended up going back into jail until we had a bond hearing which didn't take place until Fri-

day. When I got out starting Friday night I tried getting a hold of Mr. Lohbeck, in fact I met with him at 10:30 in the morning that Saturday. Said I'd been set up and find me Gilbert because I'd been in jail.

PROSECUTOR: Now. Mr. Lohbeck is what, was what at that time?

DEFENDANT: He was the news director for KZIA radio.

PROSECUTOR: Did he make this public?

DEFENDANT: Not to my knowledge.

PROSECUTOR: Did you tell anyone else?

DEFENDANT: I don't know.

DEFENSE COUNSEL: Your Honor, may we approach the bench?

(At bench.)

DEFENSE COUNSEL: Your Honor, I move for a mistrial. The question and answer was clearly a comment on defendant's failure to make a statement and improper comment on his right to remain silent.

COURT: I would deny your motion for a mistrial. We might be treading near that area of comment on the defendant's rights, and I would instruct the prosecutor to discontinue that line of questioning.

Defendant contends that the question, "Did you tell anyone about it?" clearly referred to defendant's failure to tell the police that he had been "set up" by William Wayne Gilbert.

In *State v. Romero*, 94 N.M. 300, 609 P.2d 1256 (Ct.App.1980), we stated:

[I]t is clear that the prosecution may not use the defendant's silence at the time of his arrest to impeach an exculpatory story which the defendant presents at trial. The reason is that the "silence is insolubly ambiguous."

■ Here, after questioning defendant about his arrest and subsequent arraignment, the prosecutor asked the general question, "Did you tell anyone about it (his feeling that he had been set up)?" Then,

after the defendant said he had told Kurt Lohbeck, the prosecutor asked, "Did you tell anyone else?" Because the question was asked generally and the answer directed the jury's attention to defendant's calling a local newsman rather than to his silence upon arrest, we conclude that the question did not amount to a comment on defendant's silence at the time of his arrest. Accordingly, the comment does not require reversal and the trial court properly denied the motion for a mistrial. *See, State v. Perrin,* 93 N.M. 73, 596 P.2d 516 (1979).

### Failure to Comply with Rule 27

The State offered into evidence a tape recording of a conversation between Officer Ortiz and defendant about which Ortiz had testified. The defendant objected on the basis that defense counsel had not been given the tape pursuant to N.M.R.Crim.P. 27 and the discovery order. Before the tape was played to the jury, defense counsel argued that the tape was not the one he had been given, that some of the tape had been inaudible and that it was not made accessible in the police evidence locker. The State argued that the tape was available to the defendant in the evidence locker. The defendant was given the opportunity to hear the tape before it was played to the jury. The defendant moved to exclude the tape from evidence because of the discovery violation and because the material was already covered by Officer Ortiz' testimony. The trial court found that access to the tape was made available and ruled that the tape would be played to the jury.

■ After the tape was played to the jury during a recess, the State informed the court that actually the tape had not been in the evidence locker, but that the tape had been given to the defendant in an inaudible form. The defendant moved for a mistrial. In denying the motion, the trial court found that, although there was a technical violation, it was due to inadvertence and lack of communication. Because there was no sur-

prise as to the substance and because the defendant had the opportunity to play the tape—although late—before it was played to the jury, the trial court also found there had been no harm to the defendant. We agree. The defendant was not prejudiced by the non-disclosure of the tape. Defense counsel was already aware of the conversation. The mistrial was properly denied. *Chacon v. State,* 88 N.M. 198, 539 P.2d 218 (Ct.App.1975); *State v. Quintana,* 86 N.M. 666, 526 P.2d 808 (Ct.App.1974).

### Immunity

William Wayne Gilbert had invoked his Fifth Amendment privilege when defendant attempted to take his deposition before trial and defendant's attorney believed Gilbert would not testify. During trial Gilbert informed the court he was interested in testifying, but only on the condition that the State did not question him concerning certain matters not related to his involvement with McGee. The court ruled that Gilbert had a right not to testify, but that once he was on the stand he had waived the right to a certain extent to be determined by the court on a question-by-question basis. Gilbert's attorney stated that the court's ruling was overbroad and that Gilbert would not testify.

During discussion about whether Gilbert would testify, the defendant raised the prospect of immunity. The district attorney said he was not prepared to grant immunity when Gilbert had several murder charges pending. The defendant said the court should order the State to grant immunity. The court stated that it had no authority to grant immunity without an application from the State. The defendant argued that the court could give the State a choice of granting immunity or dismissing the charges. The court stated that immunity was not a realistic possibility. On appeal, defendant claims that he was denied due process because he was deprived of a material witness and argues that, as the State had the ability to cooperate in securing the testimony, it should have been re-

quired to grant limited immunity or limit cross-examination.

■ The defendant does not argue that the court's ruling as to cross-examination was error. He alleges that the State's refusal to limit its cross-examination denied defendant due process. Because the State had a legitimate interest in attacking Gilbert's credibility, we find that the State did not act in bad faith to deprive defendant of the witness' testimony in refusing to limit cross-examination. *See, United States v. Herman*, 589 F.2d 1191 (3rd Cir., 1978).

Defendant also argues that the State should have been required to grant immunity. The court and prosecutor stated that immunity was not a realistic possibility. In so stating, they were referring to transactional immunity as opposed to use immunity. Use immunity was not considered, apparently because the parties were operating under the old N.M.R.Crim.P. 58. That rule provided a procedure for grants of transactional immunity. In 1979, the Legislature passed a statute covering immunity. Section 31–3A–1, N.M.S.A.1978 (1980 Supp.), provides only for use and derivative use immunity and was effective at the time of defendant's trial. *Under Campos v. State*, 91 N.M. 745, 580 P.2d 966 (1978), a grant of immunity is governed by the Rule of Criminal Procedure only in the absence of applicable statute. Rule 58 was subsequently amended to conform to the statute—but after defendant's trial.

Once the statute was passed, the State had authority to grant use immunity. Also, the court may have had authority on its own to order use immunity previously under N.M.R.Evid. 412. *See, State v. Archunde*, 91 N.M. 682, 579 P.2d 808 (Ct.App. 1978).

■ While we agree that a granting of transactional immunity under the circumstances could not be required of the State, an order of use immunity may have been an appropriate way of accommodating the competing interests of the State and the defendant. *See, Government of Virgin Is-*

*lands v. Smith*, 615 F.2d 964 (3rd Cir., 1980). However, we find the fact that defendant did not raise the possibility of use immunity in the trial court dispositive. Neither the court nor the prosecution was given the opportunity to consider this possibility. Consequently, we need not discuss whether the defendant had a due process right to have use immunity granted.

### Testimony of Gilbert's Attorneys

Witness Gilbert was called to the stand in chambers and he invoked his Fifth Amendment privilege. The defendant later requested that he be allowed to call Gilbert's attorneys, Virginia and A.J. Ferrara, to testify about the statements he made in their presence and that of defense counsel. The defendant offered the statements as an exception to the hearsay rule (N.M.R.Evid. 804(b)(4), N.M.S.A.1978), based on the fact that Gilbert had become unavailable by invoking the privilege and that the statements were against his interests as tending to subject him to criminal liability. The State objected to the testimony, claiming that the statements were not sufficiently trustworthy. The trial court ruled that the testimony was inadmissible because it did not fall within the exception to Rule 804(b)(4) and because there was no way to tell whether the statements would benefit Gilbert or be to his disadvantage. Further, the trial court felt that the circumstances in which the statements were made (in the presence of his attorneys in anticipation of testifying) were not circumstances that guarantee the trustworthiness of the statements.

■ We stated in *State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975), "[g]uarantees of reliability are and must be the key to open the door to the exceptions" and to invoke the exception "the precise matter offered for its truth ought to be against the interest of the declarant." Because Gilbert's statements were not clearly against his penal interest and there was no corroborating evidence, it was not error for the

court to find that the testimony did not fall within the exception to Rule 804(b)(4). The determination of the admissibility of statements under the exceptions to the hearsay rule rests within the discretion of the trial court. *State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (Ct.App.1978). The trial court did not abuse its discretion in excluding the testimony under Rule 804(b)(4).

Defendant also argues the proposed Ferrara testimony was admissible under N.M. R.Evid. 804(b)(6), N.M.S.A.1978. Assuming such a claim was made in the trial court, it was properly excluded under this rule because of the lack of circumstantial guarantees of trustworthiness.

Affirmed.

IT IS SO ORDERED.

WOOD, C. J., and WALTERS, J., concur.