649 P.2d 496

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Andrew Antonio SANCHEZ,
Defendant-Appellant.**

No. 5520.

Court of Appeals of New Mexico.

June 24, 1982.

Certiorari Denied Aug. 6, 1982.

John B. Bigelow, Chief Public Defender, Michael Dickman, Ellen Bayard, Asst. Appellate Defenders, Santa Fe, Susan Alkema, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Eddie Michael Gallegos, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

DONNELLY, Judge.

On rehearing, the opinion filed June 8, 1982, is withdrawn and the following opinion is substituted.

Defendant Andrew Sanchez was indicted and convicted of unlawful taking of a motor vehicle contrary to § 66–3–504, N.M.S.A.1978, and was acquitted of the charge of criminal damage to property under $1,000.00 contrary to § 30–15–1, N.M.S.A. 1978.

On appeal, defendant raises two assignments of error: (1) insufficiency of evidence to support his conviction; and (2) denial of a fair and impartial trial by the court's refusal to grant use immunity to one of defendant's witnesses. Issues listed in the docketing statement but not briefed were abandoned. *State v. Marquez*, 96 N.M. 746, 634 P.2d 1298 (Ct.App.1981).

### I. *Sufficiency of Evidence*

In the late evening hours of May 1, 1981, a green and white Pontiac Le Mans automobile owned by Fred Segura was stolen from the driveway by his home. At trial, Albuquerque Police Officer Ivan Smith testified that he saw the defendant accompanied by another man, driving the stolen car between 1:10 and 1:30 a. m. on the same evening. The officer spoke to one of the persons in the car, and defendant and his passenger immediately drove away from the area where the officer was located. The manager of an Allsup's convenience store, Honey Salas, testified that at approximately 2:00 a. m. the same night, she saw defendant alone in a car matching the description of the stolen vehicle drive up to the store where she was employed. The manager also testified that defendant tried to sell beer to a clerk and customers in the store and was asked to leave the premises. Shortly thereafter, the manager saw defendant rummaging through the Pontiac automobile, which was parked at the east end of the store premises. Defendant thereafter purchased 30 cents worth of gas-

oline and left. The witness personally identified the defendant in court as the person she had seen driving the Pontiac automobile.

Thereafter, Albuquerque Police Officer Joseph White discovered the car out of gas at approximately 3:30 a. m. that evening, parked in front of another convenience store located in the same proximity. Officer White testified that when he saw the car, some of the windows were broken out and the key was in the ignition. The officer ran a vehicle check, which revealed the name of the car's owner.

The owner of the car, Mr. Segura, identified the car as his and testified that he had not authorized anyone to borrow or use the car and that he had left his car keys in the vehicle. Mr. Segura also testified that he later found several items belonging to him on the ground and in the trash can near the store where the vehicle had been abandoned. These items had been left in the car earlier by Mr. Segura.

Defendant took the witness stand in his own defense and denied stealing, driving or damaging the Segura automobile. Defendant argues that the evidence adduced establishes only that he was seen driving and in possession of the stolen car; that mere possession is insufficient to prove an unlawful taking, citing *State v. McKenzie*, 47 N.M. 449, 144 P.2d 161 (1943). Defendant asserts that taking is an essential element of the offense of unlawful theft of a motor vehicle and that the evidence was insufficient to establish that defendant committed such offense.

■ The prosecution's evidence against defendant amounted to more than mere proof of possession of a stolen vehicle. The evidence indicated defendant was seen driving the car within a short period of time (several hours) after the owner left the car parked in front of his home. Defendant left in the stolen vehicle from the premises of one of the convenience stores immediately after a police officer spoke to a passenger in the car. Possession of recently stolen property constitutes circumstantial evidence connecting defendant with the taking of

the vehicle. *State v. Rivera*, 85 N.M. 723, 516 P.2d 694 (Ct.App.1973); *State v. Sanchez*, 82 N.M. 585, 484 P.2d 1295 (Ct.App. 1971).

■ Circumstantial evidence is evidence that proves a fact from which one may infer the existence of another fact. *State v. Serrano*, 74 N.M. 412, 394 P.2d 262 (1964); N.M.U.J.I.Crim. 40.00, N.M.S.A. 1978. Circumstantial evidence may be used to establish an element of a crime. *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App. 1976); *see State v. Serrano, supra; State v. Paul*, 82 N.M. 619, 485 P.2d 375 (Ct.App.), *cert. denied*, 82 N.M. 601, 485 P.2d 357 (1971). The proof, while consisting of both direct and circumstantial evidence, was sufficient to go to the jury. *See State v. Slade*, 78 N.M. 581, 434 P.2d 700 (1967).

■ Where an appellant challenges the sufficiency of the evidence to support a conviction, the standard for review is well established. The appellate court must view the evidence as a whole, direct or circumstantial, in a light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences and credibility choices that tend to support the jury's verdict. The standard of review is whether a jury could reasonably find that the circumstantial evidence is inconsistent with every reasonable hypothesis of innocence. *See State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977); *State v. Slade, supra; State v. Ferguson*, 77 N.M. 441, 423 P.2d 872 (1967); *State v. Lee*, 83 N.M. 522, 494 P.2d 184 (Ct.App.1972). Applying the above test to the evidence presented below, we determine the evidence was sufficient to support defendant's conviction.

## II. *Due Process Rights*

Defendant's second claim on appeal contends that his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and his right to due process of law and a fair and impartial trial under Article II, Sections 14 and 18 of the New Mexico Constitution were violated because the trial

court denied defendant's request for a grant of use immunity to a defense witness.

During defendant's case in chief, defendant's attorney called Johnny Lopez as a witness for the defendant. The witness appeared in court under subpoena and was sworn. He was represented by independent counsel and upon questioning by defendant's attorney, invoked his privilege against self-incrimination upon advice of his counsel. Defendant thereafter presented a tender of proof outside the hearing of the jury, showing that on July 1, 1981, the day defendant was arraigned, the witness Lopez admitted to defendant's attorney that he was the one that had stolen the Segura vehicle, and that on September 29, 1981, the witness again repeated the admission to defendant's counsel.

Based upon the offer of proof, defendant requested that the trial court grant use immunity to the witness or fashion a remedy by judicial order to make use immunity available to defendant's witness. Although acknowledging that there was no statutory authority allowing the court to grant immunity to a defense witness, defendant argued that those rights secured to defendant by constitutional due process were violated by the failure to provide the means to present this exculpatory evidence. Defendant asserts that the witness' invocation of his privilege against self-incrimination and the trial court's refusal to grant the witness use immunity deprived the defendant of essential exculpatory evidence that allegedly would have corroborated defendant's testimony before the jury.

The trial court ruled that because N.M.R. Crim.P. 58, N.M.S.A.1978 (Repl.1980), (hereinafter Rule 58), only invests authority in the court to grant use immunity upon the State's request, it had no authority to grant such immunity. The court also denied defendant's attempt to obtain admission of Lopez's statements under N.M.R.Evid. 804(b)(4), N.M.S.A.1978, holding there were insufficient corroborating circumstances indicating the statement's trustworthiness; this ruling is not challenged on appeal.

Defendant asserts that Rule 58 gives the district court power to deny immunity applications by the prosecution, and that use immunity is not totally a prerogative of the state as is the case under applicable federal law.

Defendant asserts that the court had the inherent power to fashion a remedy to compel the state to request a grant of immunity to defendant's witness or risk dismissal of the charges against defendant. Defendant argues that an integral aspect of due process is the right of a defendant to present a defense, to confront and cross-examine witnesses and to call witnesses on one's own behalf. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

In support of his contentions under Point II, defendant relies on *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980), and an earlier Third Circuit decision, *United States v. Herman*, 589 F.2d 1191 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). In *Virgin Islands*, the defendants were charged with robbery and during their trial, sought to introduce the testimony of a witness who had previously made a statement to police which inculpated himself in the crime and identified certain other individuals as having been involved in the offense. The testimony of the witness sought to be introduced by the defense, while incriminatory of Smith, would have implicitly exculpated the other three defendants. When called, the witness declined to make any significant statement and invoked his fifth amendment privilege against self-incrimination. The defense then asserted an exception to the hearsay rule, claiming that the witness had become an unavailable witness and sought to introduce into evidence the prior statement the witness had made to the police. The government objected to introduction of the witness' earlier statement, contending it was unable to cross-examine the hearsay declarant. The trial court sustained the objection of the prosecution.

Defense counsel in *Virgin Islands*, after unsuccessfully seeking to introduce the statement of the witness into evidence, then made a demand upon the prosecution to grant immunity to the witness. The government declined. Each of the defendants were convicted of robbery. On appeal, the United States Court of Appeals for the Third Circuit reversed defendant's convictions except as to Smith, holding that the government's refusal to grant immunity to the defense witness violated defendant's due process rights and deprived them of a fair trial.

In *Virgin Islands*, the court held that where a defendant requests the government to grant use immunity to a defense witness and the government refuses, (1) the trial court can order the government to grant statutory immunity to the defense witness or face a judgment of acquittal, if the court determines that the prosecution's denial of immunity amounts to a deliberate intention to disrupt the fact-finding process, or (2) even if there is no showing of prosecutorial impropriety, if it is determined that a potential witness for the defense can offer testimony that is exculpatory and essential to the defense and that the government has no strong interest in withholding use immunity, in such instance the court possesses the inherent power to grant use immunity to the witness.

The rationale in *Virgin Islands* has not gained general acceptance in other federal circuits that have considered the question whether use immunity should be granted to defense witnesses. In *United States v. Hunter*, 672 F.2d 815 (10th Cir. 1982), the court considered a similar denial of a request for the granting of use immunity to a witness called by the defense. The court in *Hunter* stated in applicable part:

> Hunter's motion for defense witness use immunity raises the issue of judicial power to fashion that protection. Virtually all jurisdictions recognize that use immunity is a creature of statute which can be conferred only by the Executive Branch of the government. *See, e.g., United States v. Richardson*, 588 F.2d

1235, 1241 (9th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *Ryan v. Commissioner*, 568 F.2d 531, 540 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *United States v. Graham*, 548 F.2d 1302, 1315 (8th Cir. 1977); *United States v. Leyva*, 513 F.2d 774, 776 (5th Cir. 1975); *In Re Lochiatto*, 497 F.2d 803, 804 n.2 (1st Cir. 1974); *In Re Kilgo*, 484 F.2d 1215, 1218 (4th Cir. 1973). *See generally United States v. Turkish*, 623 F.2d 769 (2d Cir. 1980). However, the Third Circuit held otherwise in *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980), concluding that under certain circumstances a court could immunize a witness despite the prosecution's refusal to do so. *Id.* at 966.

Hunter asks this court to adopt the *Virgin Islands* rationale and allow trial judges to confer use immunity on witnesses when necessary to provide defendants the full panoply of due process protections. He argues that his exculpatory witness asserted her Fifth Amendment guarantees because no immunity was offered by the prosecution. Hunter reasons he was precluded from adequately developing his duress defense as a result of this lack of corroborative testimony.

*Virgin Islands* outlines two techniques a court might employ if a prosecutor's refusal to grant witness use immunity handicaps a defendant's presentation of his case. The Third Circuit first notes that where the prosecutor's denial of immunity is a deliberate attempt to distort the fact finding process, a court could force the government to choose between conferring immunity or suffering acquittal. *Id.* at 968. The court then states that, even in the absence of prosecutorial misconduct, a court has the inherent authority to bestow use immunity upon a witness whose testimony is essential to an effective defense. *Id.* at 969.

We express no opinion on the first device discussed in *Virgin Islands* to force the prosecution to grant immunity inasmuch as no claim of prosecutorial misconduct has been made. However, we reject

the second holding of that case and conclude that courts have no power to independently fashion witness use immunity under the guise of due process. We hold instead that '[t]he power to apply for immunity * * * is the sole prerogative of the government being confined to the United States Attorney and his superior officers.' *Graham*, 548 F.2d at 1314.

In New Mexico, witness immunity is derived from statutory authority, § 31–3A–1, N.M.S.A.1978 (Supp.1981); Supreme Court Rule, N.M.R.Crim.P. 58, *supra*; and Rule of Evidence, N.M.R.Evid. 412, N.M.S.A.1978, (hereinafter Evidence Rule 412). The New Mexico Supreme Court Rules relating to witness immunity were derived from the federal statute, 18 U.S.C. §§ 6001–6005 (1976).[1] *See also* Uniform Rule of Criminal Procedure 732.[2] While authority in this state to grant use immunity stems from both court rule and statute, and not solely from statute as is true in the federal system, this distinction does not warrant adoption here of a different result from that followed in a majority of federal jurisdictions.

Rule 58 provides in pertinent part that a district court "may, *upon the written application* of the prosecuting attorney, issue a written order requiring the person to testify or to produce the record, document, or other object notwithstanding his privilege against self-incrimination." (Emphasis added).

Section 31–3A–1, *supra*, is declarative of the nature of the immunity that may be granted by the court. This statute provides in part:

A. If a witness is granted immunity in return for evidence, none of his testimony or any evidence obtained as a fruit of his testimony shall be used against him in any criminal prosecution except that such person may be prosecuted for any perjury committed in such testimony or in producing such evidence, or for contempt for failing to give an answer or produce evidence.

Evidence Rule 412 is similar in its content to § 31–3A–1, *supra*, and together with Rule 58, provides a means for supplanting the privilege against self-incrimination by a grant of immunity from the court. As originally adopted, Rule 58 accorded full immunity from prosecution for the offense to which the compelled testimony related and provided for a grant of "transactional immunity."[3] Section 31–3A–1, *supra*, however, as subsequently enacted by the legislature, provided for "use or derivative use" immunity.

As noted in the revised committee commentary to Rule 58, *supra*, (Supp.1981), the disparity between the types of immunity authorized in § 31–3A–1, *supra*, and the Supreme Court Rules were addressed by the Supreme Court when in 1979 Rule 58 was amended to "implement the general witness immunity statute [§ 31–3A–1, *supra*,] enacted by the 1979 session of the legislature and to eliminate the conflict between the Rules of Evidence and Rules of Criminal Procedure." *State v. McGee*, 95 N.M. 317, 621 P.2d 1129 (Ct.App.1980). Because use or derivative use immunity is more limited in its scope than transactional immunity, the utilization of the former leaves the witness and the government in substantially

1. M. Thompson III, New Mexico Criminal Law Handbook, N.M. Rules of Criminal Procedure, Rule 58 Commentaries (2d ed. 1975).

2. Carlson, *Witness Immunity in Modern Trials: Observations on the Uniform Rule of Criminal Procedure*, 67 J.Crim.L. & Criminology 129 (1976).

3. As noted in 3 Wharton's Criminal Procedure § 409, at 94 (12th ed. C. Torcia 1975): "[T]here are two kinds of immunity: 'Transactional' and 'use and derivative use.' Under the former, the witness may never be prosecuted for the offense to which the immunity relates; under the latter, the witness' testimony or any information derived from such testimony may never be used against the witness in a subsequent prosecution. Under a statute authorizing 'use and derivative use' immunity, the witness may still be prosecuted for the offense to which the compelled testimony relates. However, the prosecution would have the burden of proving that the evidence it proposed to use was 'derived from a legitimate source wholly independent of the compelled testimony.'"

the same position as if the witness had claimed his privilege in the absence of a grant of immunity. *See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

Section 31–3A–1, *supra*, and Evidence Rule 412 are both silent as to any procedural requirements governing the application for granting witness immunity.

Rule 58 specifies the procedural requirements which must be followed to obtain a grant of witness immunity. Rule 58 requires a written application by the prosecution to the court for the granting of immunity, and further requires adoption of certain specific findings by the court.

■ Compliance with the procedural requirements of Rule 58 is mandatory. *Cf. State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). Under the constitutional separation of powers, the judicial branch has the authority to specify procedural requisites involving judicial proceedings. *See State v. Romero* 96 N.M. 795, 635 P.2d 998 (Ct.App.1981); *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (Ct.App.), *cert. denied*, 84 N.M. 456, 504 P.2d 1089 (1973).

The express wording of Rule 58 provides that only the prosecution may apply for a grant of witness immunity. Defendant, however, argues that even if Rule 58 does not permit a defendant to directly apply to a trial court for the grant of immunity to a defense witness, a trial court should order the prosecution to either seek immunity for its defense witness, or else suffer dismissal of the charges against the defendant herein. This same argument was advanced in *State v. McGee, supra*. In *McGee*, this claim was discussed but not decided. *See also State v. Archunde*, 91 N.M. 682, 579 P.2d 808 (Ct.App.1978).

Authorization empowering a court to grant witness immunity has generally been held to necessitate either a constitutional or legislative enactment. *Apodaca v. Viramontes*, 53 N.M. 514, 212 P.2d 425 (1949). In *Campos v. State*, 91 N.M. 745, 580 P.2d 966 (1978), it was implicitly held, however,

that in the absence of express legislative provision, the Supreme Court could promulgate by rule a means of authorizing witness immunity. *See also State v. Gabaldon*, 92 N.M. 230, 585 P.2d 1352 (Ct.App.), *cert. denied*, 92 N.M. 260, 586 P.2d 1089 (1978). In *Campos*, it was held, "Criminal Rule 58 was promulgated and approved by this Court to provide a method by which a grant of immunity could be secured and the constitutional proscription against self-incrimination protected."

Following *Campos*, the legislature in 1979 enacted § 31–3A–1, *supra*, which authorized the granting of use and derivative use immunity. Laws 1979, ch. 339, § 10. After the enactment of § 31–3A–1, the Supreme Court modified Rule 58 in 1980 to conform its rule to the statute. *State v. McGee, supra*.

■ The committee commentary to Rule 58 indicates that "together with Rule of Evidence 412 [it] creates a procedure for supplanting the privilege against self-incrimination by a grant of immunity from the court on the application of *any party*." The rule, however, is not so broad. Committee commentaries undertaking to interpret the rules of criminal procedure where they are not predicated upon decisional precedent or statutory provision, while of value, are not necessarily controlling as to their interpretations. *See State v. Doe*, 93 N.M. 621, 603 P.2d 731 (Ct.App.1979); *State v. Zamora*, 91 N.M. 470, 575 P.2d 1355 (Ct. App.), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978).

■ A defendant has no sixth amendment right to demand that any witness he chooses be immunized, and the prosecution's refusal to grant immunity to a defense witness who would allegedly offer exculpatory testimony to a defendant does not amount to a denial of due process or violation of appellant's sixth amendment rights. *United States v. Alessio*, 528 F.2d 1079 (9th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976); *United States v. Smith*, 542 F.2d 711 (7th Cir. 1976); *United States v. Ramsey*, 503 F.2d 524 (7th Cir. 1974), *cert. denied*, 420 U.S. 932, 95 S.Ct. 1136, 43 L.Ed.2d 405 (1975).

In *United States v. Alessio, supra,* the court held:

To interpret the Fifth and Sixth Amendments as conferring on the defendant the power to demand immunity for co-defendants, potential co-defendants, or others whom the government might in its discretion wish to prosecute would unacceptably alter the historic role of the Executive Branch in criminal prosecutions.

In *Matter of J. W. Y.,* 363 A.2d 674 (D.C.1976), a similar argument to that advanced by the defendant herein was also raised. The court there held that refusal of the trial court to grant immunity to a defense witness, or to order the prosecution to seek immunity for defendant's witness, did not violate defendant's constitutional rights. There the court stated:

While the Sixth Amendment secures to the accused the right to 'compulsory process for obtaining witnesses in his favor' (*see Washington v. Texas* [388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)] * * * [*supra*]) where that right and the Fifth Amendment privilege of the witness against self-incrimination collide, the latter must prevail. *See, e.g., United States ex. rel. Tatman v. Anderson,* 391 F.Supp. 68, 71 (D.Del.1975); *Holloway v. Wolff,* 351 F.Supp. 1033, 1038 (D.Neb.1972), *rev'd on other grounds,* 482 F.2d 110 (8th Cir. 1973). *See also Washington v. Texas, supra,* [388 U.S.] at 23 n.21, 87 S.Ct. 1920 [at 1925 n.21]; *Myers v. Frye,* 401 F.2d 18, 20–21 (7th Cir. 1968); 8 Wigmore on Evidence 518–19 (McNaughton rev. 1961).

\* \* \* \* \* \*

Under the statutory scheme the grant of immunity rests in the sound discretion of the executive branch of the government. *See Earl v. United States,* 124 U.S.App.D.C. 77, 80, 361 F.2d 531, 534 (1966), *cert. denied,* 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967); *United States v. Bautista,* 509 F.2d 675, 677 (9th Cir.), *cert. denied sub nom. Monsivais v. United States,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *United States v. Berrigan,* 482 F.2d 171, 190 (3d Cir. 1973); *see also United States v. Braasch,* 505 F.2d 139 (7th Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975). In *Terrell v. United States,* D.C. App.[,] 294 A.2d 860 (1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973), we held that the unwillingness of the government to grant immunity to a defense witness does not amount to a denial of due process or an infringement of Sixth Amendment rights. [Footnotes omitted.]

■ We find that Rule 58 controls the procedural method for seeking a grant of witness immunity and restricts applications for immunity to those initiated by the prosecution. Except where coupled with a showing of prosecutorial misconduct, refusal of the prosecution to seek a grant of witness immunity for a defense witness or refusal of the trial court to fashion a remedy to extend use immunity to a defense witness, does not constitute a denial of due process to the defendant. *Compare United States v. Smith,* 156 U.S.App.D.C. 66, 478 F.2d 976 (1973); *United States v. Alessio, supra.*

■ The trial court did not err in ruling that the power to seek witness immunity rests within the power granted solely to the prosecution, and the court did not err in its denial of defendant's request to compel the state to seek a grant of witness immunity for defendant's witness or suffer dismissal of the charges filed or in its refusal to fashion a remedy as requested by defendant.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.