**Richard VALDEZ, Petitioner-Appellant,**

v.

**Harvey D. WINANS, Warden, New
Mexico State Penitentiary,
Respondent-Appellee.**

No. 82–2503.

United States Court of Appeals,
Tenth Circuit.

June 26, 1984.

Tova Indritz, Federal Public Defender,
Albuquerque, N.M., for petitioner-appellant.

Michael E. Sanchez, Asst. Atty. Gen.,
Santa Fe, N.M. (Paul G. Bardacke, Atty.
Gen., and Eddie Michael Gallegos, Asst.
Atty. Gen., Santa Fe, N.M., with him on
brief), for respondent-appellee.

Before McWILLIAMS and SEYMOUR,
Circuit Judges, and WEINSHIENK,* District Judge.

McWILLIAMS, Circuit Judge.

This is a federal habeas corpus proceeding involving a state prisoner. 28 U.S.C.
§ 2254 (1976). Following an extended evidentiary hearing, a federal magistrate
made certain findings and then recommended dismissal of the petition with prejudice. Objections were made to the findings
and recommendation of the magistrate.
The federal district judge, after making a
*de novo* determination of that part of the
magistrate's findings that had been challenged, adopted those findings and dismissed the petition with prejudice. Valdez
appeals. We affirm.

I.

Some background facts are essential. A
jury convicted Richard Valdez, in a New
Mexico state court, of the armed robbery
of an Albuquerque pharmacy in which
money, narcotics and cigarettes were stolen. Under New Mexico's habitual criminal
statute, Valdez was sentenced to life imprisonment.

---

* Honorable Zita L. Weinshienk, United States
District Judge for the District of Colorado, sitting by designation.

At trial, Valdez was identified by three pharmacy employees and a customer as being one of two persons who robbed the pharmacy. The second robber was never identified or apprehended.

Valdez testified in his own behalf and denied any participation in the robbery. Defense counsel attempted to show that the government witnesses were mistaken in their identification of Valdez. Also, alibi evidence was offered tending to show that, at the time of the robbery, Valdez was at his job in a junk yard on the other side of town. As stated, the jury convicted Valdez, and, on appeal, the Supreme Court of New Mexico affirmed Valdez' conviction. *State v. Valdez*, 95 N.M. 70, 618 P.2d 1234 (1980). Valdez thereafter exhausted state post-conviction remedies and then instituted the present proceeding. Valdez claims that his Sixth and Fourteenth Amendment rights under the United States Constitution were violated during the course of his state trial.

Valdez' constitutional claims are based on the following sequence of events. About one week before the start of Valdez' trial, Ricky Garcia, a fellow prisoner awaiting trial on an unrelated charge, "confessed" to Valdez that he, Garcia, and a third party were the two who had actually held up the drugstore, and that Valdez was completely innocent. At that time, Valdez was represented by Alice Hector, who headed the Albuquerque branch of the New Mexico public defender's office. Valdez then conveyed the information given him by Garcia to Hector. When Hector approached Garcia, she found out that Garcia himself was represented by another attorney in the same public defender's office. She told Garcia that she was going to speak to his attorney. Hector was quite sure that Garcia's attorney would urge him not to say anything to Hector, but Hector told Garcia that the decision was his to

make, and that she hoped that, when she returned to the jail, Garcia would be willing to talk.

Hector returned to interview Garcia that same day, and, according to Hector, Garcia was eager to talk despite his attorney's advice. He repeated his confession, and, according to Hector, evidenced knowledge of such detail as led her to conclude that Garcia was indeed one of the two robbers. Shortly prior to trial, after consulting with the trial judge concerning the possible conflict of interest in having the public defender's office represent both Garcia and Valdez, and realizing that she might be called upon to testify as a defense witness, Hector withdrew from the case. A private attorney was contracted by the public defender's office to represent Valdez.

At trial, defense counsel called Garcia as a witness. However, Garcia, on advice of counsel, refused to testify on Fifth Amendment grounds. Defense counsel then called Hector as a witness, and proposed to have her relate to the jury the confession given her by Garcia at the jail.

At this point, the prosecutor raised two objections. First, he argued that Hector, having worked in the same office as Garcia's attorney, was, for purposes of the attorney-client privilege, also Garcia's attorney. As such, Garcia had a right to prevent Hector from testifying in Valdez' behalf by asserting that privilege. Second, he argued that, even if it was not privileged, Hector's proffered testimony was inadmissible hearsay.

Garcia's attorney was called into the courtroom. The trial judge instructed her to discuss with her client whether he wanted to assert the attorney-client privilege. After a conversation with Garcia, his attorney returned and claimed the privilege for him. The trial court then sustained the prosecutor's objection.[1]

---

**1.** The trial court did not rule on the hearsay question. Defense counsel at trial and at oral argument stated that Hector's testimony could have come in as an admission against interest under N.M.R.Evid. 804(b)(4), N.M.S.A. (1978). New Mexico follows the Federal Rules of Evi-

dence in allowing the admission of statements against penal interest offered to exonerate the defendant where the witness is unavailable, provided there are sufficient corroborating circumstances to assure the statement's trustworthiness. Fed.R.Evid. 804(b)(3). Whether Garcia's

Accordingly, the Valdez jury was not allowed to hear the confession of Garcia, either from Garcia himself, or from Valdez' prior attorney, Hector. It is the latter fact that is at the heart of the present appeal. Valdez claims that the exclusion of Hector's proffered testimony was erroneous, and that it was of such importance to his defense as to deny him due process. Alternatively, Valdez contends that if Hector's testimony was properly rejected, then he was denied his Sixth Amendment right to effective assistance of counsel because Hector's actions deprived Valdez of the benefit of Garcia's confession.

## II.

The basis for the state trial court's rejection of Hector's proffered testimony was the attorney-client privilege. N.M.R.Evid. 503(b), N.M.S.A. (1978). The New Mexico Supreme Court, in upholding the ruling, found that, although Hector did not actually represent Garcia, she was, in effect, his "attorney" because Garcia was represented by a member of her staff. As such, confidential statements made by Garcia to Hector came within the purview of the New Mexico rule. *Valdez*, 618 P.2d at 1236. The Supreme Court further found that Garcia's statements were given in confidence and to facilitate legal services to Garcia. *Id.* at 1236–37.

Under 28 U.S.C. § 2254(d), federal courts are required to apply a presumption of correctness to state court findings of fact. *See Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) and *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). In this case, whether Hector's proffered testimony was within the scope of the New Mexico rule on attorney-client privilege involves issues of fact

and the interpretation of a local rule of evidence.

We have held that a state court's evidentiary rulings "may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir.1979), *cert. denied*, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). *Accord Corn v. Zant*, 708 F.2d 549, 555 (11th Cir.1983) ("a federal court does not sit as a state appellate court to correct violations of state evidentiary rules."). Neither the magistrate nor the federal district judge was convinced that the privilege ruling was repugnant to the constitution, nor are we.

■ Valdez relies on *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), in support of his right, under the Compulsory Process Clause of the Sixth Amendment, to present the testimony of his own witnesses. This right is, of course, a fundamental element of due process. *United States v. Crawford*, 707 F.2d 447, 449 (10th Cir.1983). However, the right to compulsory process does not necessarily displace traditional testimonial privileges. *Washington*, 388 U.S. at 23, fn. 21, 87 S.Ct. at 1925, fn. 21; *United States v. Turkish*, 623 F.2d 769, 774 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). On occasion, the needs of the judicial process have been held to limit a claim of privilege, *see, e.g., United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (presidential privilege), but the Sixth Amendment usually has been forced to yield when a testimonial privilege is asserted.

The Seventh Circuit in *Myers v. Frye*, 401 F.2d 18 (7th Cir.1968), faced a situation similar to the one now before us. There,

confession was truly against his penal interest is debatable. He apparently had little to lose by making a false confession because he had already been convicted of numerous other crimes. We are also informed that Garcia now stands convicted of a capital crime and has been sentenced to death *See State v. McGee*, 95 N.M. 317, 621 P.2d 1129, 1133 (App.1980); *State v. Anaya*,

89 N.M. 302, 551 P.2d 992, 994 (App.1976) (policy underlying requirements of Rule 804(b)(4) is to circumvent fabrication). However, as mentioned, the trial court did not decide whether Garcia's statement was, in reality, against his interest, nor did the court make any ruling concerning corroborating circumstances that would lend credibility to the confession.

the defendant sought to establish his insanity by introducing letters written by him to his teenage accomplice. The letters were held by the teenager's attorney, and he refused to produce them for fear that they would incriminate his client. The defendant relied on *Washington v. Texas*, and argued that he had a Sixth Amendment right to compel the attorney to produce the letters. But the court of appeals, in dismissing the habeas petition, held that the attorney-client privilege should prevail. *Id.* at 21. *See also United States v. Hunter*, 672 F.2d 815 (10th Cir.1982) (upholding the privilege against self-incrimination); *United States v. Brown*, 634 F.2d 819 (5th Cir.1981) (upholding the marital privilege).

Valdez also relies on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), to support his argument that prohibiting Hector from presenting the confession of Garcia to the jury amounts to a denial of due process. In *Chambers*, the Supreme Court reversed a murder conviction partly because the trial court had excluded the testimony of three witnesses to whom a party not charged with the murder had confessed. But in *Chambers* the evidence was excluded because of the hearsay rule, and the hearsay rule does not serve the same evidentiary purpose as the attorney-client privilege. The hearsay rule serves to exclude potentially unreliable evidence. "Privileges, on the other hand, are designed to promote relationships and interests outside the courtroom by permitting witnesses to keep even reliable evidence secret." P. Westen, *The Compulsory Process Clause*, 73 Mich. L.R. 71, 161 (1974). Therefore, *Chambers* does not support the notion that the right to compulsory process overrides the attorney-client privilege.

We note also that, despite his attorney having claimed the privilege on his behalf to prevent Hector from testifying at Valdez' trial, Garcia did testify at length and did repeat his confession before the federal magistrate after Valdez had been convicted. Pressed to explain why he had taken the Fifth Amendment at Valdez' trial and why he had also invoked the attorney-client privilege to effectively muzzle Hector, Garcia stated that his own trial on other charges was proceeding in another courtroom, and he thought that, by pleading the Fifth Amendment, he could return to testify once his own trial had concluded. He blamed his attorney for confusing him.

The state trial judge, however, saw it differently. After Garcia finally testified in federal court, Valdez moved for a new trial in state court based on Garcia's confession in the federal proceeding. In denying the motion, the state trial judge explained that he had watched Garcia assert his Fifth Amendment rights at Valdez' trial, "all of this, as if it were a game. I don't believe a single word he said in the Federal Court transcript." The magistrate, too, was unimpressed with Garcia's performance. He found that Garcia's testimony at the evidentiary hearing "lacked credibility." We are of the same opinion.

Finally, and most important, there is conclusive evidence that Valdez committed the crime he was convicted of. Three prosecution witnesses testified that they "were positive the defendant was the man who committed the robbery, and [a] fourth [witness] was almost positive." *Valdez*, 618 P.2d at 1236. Moreover, these same witnesses were shown Garcia's picture during a pretrial photographic array at the police station, but not one of them selected his picture. *Id.*

■ In sum, in rejecting Valdez' due process claim, we hold that the magistrate and the district court did not err in declining to overrule the New Mexico Supreme Court on the question of whether the statements made by Garcia to Hector were privileged. Under the circumstances of this case, to hold otherwise would amount to an unjustified intrusion by the federal courts.

### III.

■ Valdez has, as indicated, an alternative argument. He complains that, if Garcia's statements to Hector were indeed covered by the attorney-client privilege, then Hector failed to provide effective assist-

ance of counsel. Because of Hector's handling of this matter, Valdez argues that the jury that convicted him was not permitted to consider Garcia's confession, which might have led to a verdict of acquittal.

"The Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). Therefore, in assessing this particular contention, we must determine whether Hector's representation of Valdez fell below this standard, and, if so, we must then consider the resulting prejudice to the defense. *United States v. Glick*, 710 F.2d 639, 644 (10th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984).

As we understand it, Valdez believes that Hector made two mistakes. First, she should have withdrawn from the case as soon as she learned that Garcia was also represented by the public defender's office. Had Hector withdrawn before eliciting Garcia's confession, a private attorney, not associated with the public defender's office, might have been appointed sooner to represent Valdez. Presumably, this private attorney could then have met with Garcia and obtained a confession from him without the obstacle of the attorney-client privilege. Second, Hector's failure to withdraw immediately was compounded by her failure to preserve Garcia's alleged waiver of the privilege by taping, or by bringing an independent witness to, the interview.

We find these arguments too speculative. For one thing, it is uncertain that Garcia would have talked as freely as he allegedly did to Hector in the presence of other parties or in the presence of a tape recorder. For another, it is not clear that if a different attorney had been appointed to represent Valdez that this attorney would have been as successful in talking to Garcia as Hector suggests that she was.[2] We find that much of the criticism leveled against Hector can "be categorized as Monday morning quarterbacking." *United States v. Vader*, 630 F.2d 792, 794 (10th Cir.), *cert. denied*, 449 U.S. 1037, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980).

The situation, upon which Valdez bases his ineffective assistance claim, occurred, in large measure, within the space of a single day. Upon learning that Garcia had confessed to Valdez, Hector's overriding concern as a conscientious advocate was to locate Garcia and obtain, if possible, a detailed confession from him. This she apparently succeeded in doing. Hector probably had little time for reflection. No doubt she feared if she did not act quickly, Garcia might change his mind or might be transferred to another prison by the time she returned. As a result, the confession might be lost.

Moreover, when Garcia spoke to Hector against his attorney's advice, Hector had grounds to believe that Garcia had waived the attorney-client privilege. She assumed he would be willing to broadcast his confession in open court to free a purportedly innocent Valdez. The trial court's contrary ruling on the privilege question stemmed, in part, from the fact that Garcia invoked the Fifth Amendment and claimed the attorney-client privilege at Valdez' trial. He thereby substantiated his original intent to confide in Hector and *not* to waive any privileges. We do not believe that Hector's failure to anticipate this turn of events rises to the level of a Sixth Amendment violation.

The record demonstrates that Hector was a zealous defense attorney in this case. Any misjudgment occurred because of her eagerness to help Valdez by pursuing Garcia's alleged confession. She was diligent in preparing for trial and had garnered extensive experience in the field of criminal law over an eight-year period, handling over one thousand cases and trying more than one hundred. Her conduct was, we believe, substantially better than the conduct condemned in those cases where we have upheld claims of ineffective assistance

---

**2.** In point of fact, Garcia did not confess again    to Valdez' new attorney.

of counsel. *See, e.g., Griffin v. Winans,* 684 F.2d 686 (10th Cir.1982); *United States v. Porterfield,* 624 F.2d 122 (10th Cir.1980); *Mullins v. Evans,* 622 F.2d 504 (10th Cir. 1980).

We also believe our rejection of Valdez' ineffective assistance claim is in accord with the rationale of two very recent Supreme Court decisions. *See Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *United States v. Cronic,* — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Therefore, we conclude that Valdez received effective assistance of counsel.

Judgment affirmed.