551 P.2d 992

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Olivia ANAYA and Bennie Baca, Defendants-Appellants.**

**No. 2335.**

Court of Appeals of New Mexico.

June 15, 1976.

Jan A. Hartke, Acting Chief Public Defender, Bruce L. Herr, Appellate Defender, Reginald J. Storment, Asst. Appellate Defender, Santa Fe, for appellants.

Toney Anaya, Atty. Gen., Santa Fe, Louis Valencia, Paquin M. Terrazas, Asst. Attys. Gen., for appellee.

OPINION

WOOD, Chief Judge.

Convicted of the possession of heroin, defendants appeal. The three issues involve (1) search by severing a sewer line, (2) sufficiency of the evidence, and (3) exclusion of an exculpatory statement.

*Search by Severing the Sewer Line*

■ Officers obtained a search warrant to search the trailer occupied by defendants. The search party arrived a short distance from the trailer at 6:00 a.m. At 6:03 a.m., Lieutenant Montoya and Officer Lopez removed a piece from the skirting around the base of the trailer, crawled underneath and began sawing the sewer pipe beyond the confluence of the piping from the two bathrooms. Someone used one of the bathrooms. When the toilet was flushed the officers were sprayed with water and urine from the opening in the partially sawed pipe. Fearing their presence under the trailer had been discovered, by walkie-talkie, Lieutenant Montoya directed other officers to execute the search warrant. This message was received at 6:09 a.m. Officers arrived at the front door of the trailer at 6:10 a.m. The officers underneath the trailer heard the officers knock and identify themselves at the front door of the trailer. The officers underneath the trailer heard running followed by a second flush. They had just completed the severing of the pipe. They recovered two packets of heroin from the sewer pipe immediately after the second flush.

Defendants contend that the unannounced intrusion into the crawl space underneath the trailer and the severing of the sewer pipe did not comply with *State v. Baca,* 87 N.M. 12, 528 P.2d 656 (Ct.App. 1974). On the basis that the *Baca* rule had been violated, defendants contend the search was unconstitutional and the heroin recovered from the sewer should not have been admitted as evidence.

*State v. Baca,* supra, states the general standard that prior to forcible entry, an officer must give notice of authority and purpose and be denied admittance. *Baca* states that noncompliance with the standard may be justified by exigent circumstances known to the officer beforehand. One example of an exigent circumstance in *Baca* was when the officer, in good faith,

believes that a person is attempting to destroy evidence.

*State v. Sanchez,* 88 N.M. 402, 540 P.2d 1291 (1975) states:

"An exigent circumstance exists if, prior to entry, officers in good faith believe that the contraband, or other evidence, for which search is to be made is about to be destroyed."

At the evidentiary hearing on the motion to suppress there was testimony that heroin is often disposed of by flushing it down the toilet. Lieutenant Montoya testified that upon a prior arrest of Olivia for a narcotic offense she "took off towards the bathroom with the suspected heroin, and I had to tackle her before she went to the bathroom . . . ."

The question of exigent circumstances is one of fact. *State v. Sanchez,* supra. The trial court found there were exigent circumstances. The evidence supports the trial court's finding. The entry under the trailer and the severing of the sewer pipe did not amount to an unconstitutional search under the circumstances of this case.

*Sufficiency of the Evidence*

■ Apart from the heroin recovered from the sewer pipe, no contraband was found. In determining whether the defendants—Olivia and Bennie—possessed that heroin, we review the evidence in the light most favorable to the State. *State v. Vigil,* 87 N.M. 345, 533 P.2d 578 (1975).

There is evidence that after the officers knocked on the door prior to entry a voice said: "'Who is it?'" This voice was identified as Olivia's. After the officers knocked, running was heard from the front portion of the trailer to the portion of the trailer above where the officers were located under the trailer. After this running the toilet was flushed and the heroin was recovered immediately thereafter. Upon entry the officers found Olivia standing in a location consistent with her having been the person who flushed the toilet. Lieutenant Montoya emerged from underneath

the trailer with the heroin. When Olivia saw the heroin in Montoya's hands, she said: " 'Ricky, not again' ". Montoya had arrested her previously for a narcotics offense. There is evidence that at the police station Olivia remarked that if Bennie Herrera [not further identified] could get out of it, so could she.

Olivia claims that the evidence against her is circumstantial and does not point unerringly to her guilt. This misstates the evidence concerning the other occupants of the trailer. There were five children in the trailer. One of the children was a baby who was asleep. The other four were "young children", none were teenagers. Of the three adults apart from Olivia, there is evidence that Pete Romo was asleep in one bedroom, that the co-defendant, Bennie, was asleep in another bedroom and that Marcella Baca was in the living room during the running and the flushing of the toilet. The evidence that Olivia possessed the heroin is substantial and supports her conviction.

The evidence is that Bennie was in bed, asleep, when the officers entered the trailer. Only two items of evidence point in anyway toward Bennie. One item is that plastic baggie tops were found on top of the watertank to the commode in the bathroom off the bedroom where Bennie was sleeping. There is no evidence in the record before us connecting the baggie tops with the heroin that was recovered. The second item is evidence that after his arrest, Bennie asked Pete Romo to do him a favor. There is no evidence as to the favor requested. The evidence is insufficient to sustain Bennie's conviction.

*Exclusion of an Exculpatory Statement*

■ Pete Romo died prior to the trial of defendants. His statement was introduced into evidence by stipulation of the parties. In that statement Romo could not remember making any statement to the effect that the heroin was his. The defense tendered the testimony of a witness. This witness would have testified that Romo told the witness that the heroin was his and that it was not Olivia's. The claim is that the trial court erred in excluding this hearsay testimony.

Evidence Rule 804(b)(4) provides that certain statements against interest are not excluded by the hearsay rule if the declarant is unavailable as a witness. This rule states: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated." The advisory committee's notes to the rule state: "The requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication."

Before excluding the tendered testimony, the trial court inquired if there was any corroboration. Defense counsel stated: "we have nothing." To avoid the admission that the necessary corroboration was lacking, the claim on appeal is that exclusion of the testimony was plain error. Since the policy behind Evidence Rule 804(b)(4) is to require corroboration in order to circumvent fabrication, there was no plain error as that term is defined in *State v. Marquez,* 87 N.M. 57, 529 P.2d 283 (Ct.App.1974).

The conviction of Olivia Anaya is affirmed. The conviction of Bennie Baca is reversed because of insufficient evidence.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.