721 P.2d 397

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Bernie SMITH, Defendant-Appellant.**

**No. 15128.**

Supreme Court of New Mexico.

June 18, 1986.

Rehearing Denied July 14, 1986.

Winston Roberts-Hohl, Santa Fe, for defendant-appellant.

Paul Bardacke, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Asa Kelly, Jr., Silver City, Trial Counsel.

## OPINION

STOWERS, Justice.

Defendant Bernie Smith was convicted of first degree murder for the death of Ralph Pierro. He appealed his conviction, challenging the exclusion at trial of exculpatory testimony regarding an out-of-court statement made by his codefendant and the exclusion of evidence of threats made against the witness offering that testimony. While the appeal was pending, this

Court remanded to the trial court to hear defendant's motion for a new trial on the basis of newly discovered evidence, an affidavit of the codefendant confessing her role in Ralph Pierro's death and exculpating defendant. The trial court denied the motion, and defendant supplemented his appeal with a claim that the trial court's denial constituted an abuse of discretion.

We affirm the trial court's denial of the motion for a new trial. We also affirm its evidentiary rulings challenged here. Accordingly, we affirm defendant's conviction.

This case presents the following issues:

(1) Did the trial court abuse its discretion in denying defendant's motion for a new trial on the basis of newly discovered evidence, under NMSA 1978, Crim.P. Rule 45(c) (Repl.Pamp.1985), where the evidence offered was the affidavit of a codefendant who had invoked her Fifth Amendment right not to testify at defendant's trial? Wanda Pierro Smith, the victim's and, later, the defendant's wife, was tried separately and was convicted of voluntary manslaughter before she came forward with this affidavit.

(2) Did the trial court err in concluding that witness Karen Eaton's testimony about cellmate Wanda Smith's out-of-court statement tending to exculpate defendant was not admissible at trial under the hearsay exception for statements against interest, NMSA 1978, Evid. Rule 804(b)(4) (Repl. Pamp.1983)?

(3) Did the trial court err in excluding evidence of "threats" made by Danny Watkins, Wanda Smith's son, in order to prevent Karen Eaton from repeating Wanda's statement?

The facts of this case are quite extraordinary, and must be related in some detail in order to demonstrate why we do not believe the trial court abused its discretion in refusing to grant a new trial. In January 1982, Wanda and Ralph Pierro's marriage was in the process of legal dissolution, and Wanda was living with defendant. Days before Ralph Pierro was killed, he was awarded temporary custody of their three minor children and exclusive possession of the family home.

On the night of January 28, 1982, the two Pierro boys ran away and were reunited with their mother, but their three-year-old sister remained with Pierro. By the morning of January 29, 1982, Wanda had recovered her daughter, and Ralph Pierro was dead. Defendant and Wanda's grown son by a previous marriage, Steve Watkins, had wrapped the body in bedding, removed it from Pierro's house, driven it into the desert, and dumped it down an abandoned mineshaft. They had then driven Ralph Pierro's truck to a junkyard in Juarez, Mexico, stripped it of identification, and abandoned it.

In the weeks that followed, both defendant and Wanda were questioned by the police several times. They separately stated that they had seen Ralph in Las Cruces after the date of his death, and that he had gone East but had made long-distance phone calls. In March 1982, Wanda petitioned the court for a dissolution of marriage and distribution of property, testifying that Ralph's whereabouts were unknown. Defendant, Wanda, defendant's children, and Wanda's children moved into the Pierro house.

On April 2, 1982, defendant and Wanda Pierro were arrested, but were released because the body had not been found. A few days later, defendant and Wanda were married. They travelled around the western United States for months. Finally, Ralph Pierro's body was discovered and identified, and on October 2, 1982, defendant and Wanda Smith were arrested in Hope, Alaska.

While awaiting extradition, Wanda allegedly told a fellow prisoner, Michael Bowlin, about the killing of Ralph Pierro. Later in October 1982, defendant and Wanda were brought to New Mexico, charged, arraigned, and granted separate trials. In March 1983, Wanda told her cellmate Karen Eaton that her eldest son Steve Watkins had killed Ralph Pierro. A month before,

Steve, an armed robbery suspect, had been shot and killed by FBI agents.

Wanda Smith was tried for Ralph Pierro's murder in April 1983. At her trial she testified that defendant Bernie Smith had killed Pierro. She also denied discussing the crime with Michael Bowlin in Alaska. She was convicted of involuntary manslaughter, and appealed.

Defendant came to trial on June 20, 1983. The prosecution's chief witness was Danny Watkins, Wanda Smith's second son, who testified that defendant had told him that he, defendant, had killed Ralph Pierro. The prosecution also presented testimony of defendant's statements and actions through Danny's girlfriend and through the officers who investigated Pierro's killing. The prosecution called as a witness Wanda Smith, but she declined to testify, invoking her spousal and self-incrimination privileges.

Taking the witness stand in his own behalf, defendant testified that on January 28, 1982, Wanda went to the Pierro house to meet with Ralph. When she returned she was a little upset, and sent defendant to Pierro's house to jumpstart Steve Watkins's car. Defendant there found Steve with the body. Defendant testified that he did not know who killed Ralph Pierro and that, despite his suspicions, he never asked Wanda what had happened that night.

Apparently unimpressed by defendant's alibi defense, the jury found him guilty of first degree murder, tampering with evidence, and conspiracy to tamper with evidence. Defendant was sentenced to life imprisonment and to two eighteen-month terms, to be served concurrently. He promptly commenced this appeal.

In November 1983, Wanda Smith divorced defendant. The following month, defendant's father arranged a meeting between Wanda, his Deming lawyer, and himself. At that meeting, on December 12, 1983, Wanda stated on tape that she, not Bernie Smith, was responsible for Ralph Pierro's death. Pierro tried to force her to have sex with him, she said, and Wanda angrily shoved him away. He hit his head on a doorframe and fell to the floor, hitting his head again on a decorative rock planter. When Wanda realized he was dead, she telephoned defendant, then drove to his trailer and brought him back to the scene of Pierro's death.

On the basis of this statement, defendant moved this Court to remand to district court for consideration of his motion for a new trial. Wanda Smith had chosen not to release the taped statement, however, and we denied the motion. After her conviction was reversed and retrial for homicide precluded, she obtained the tape and prepared a handwritten statement, signed and notarized on June 13, 1984. When defendant presented her affidavit to this Court, we granted his motion to remand to the trial court for a hearing on his motion for a new trial.

Wanda Smith's affidavit was admitted into evidence at defendant's motion hearing on September 5, 1984, and she appeared as a witness. Wanda was cross-examined about her motives for coming forward. She reluctantly admitted having given different versions of Ralph Pierro's death and disappearance to the investigating detective; to the court which granted her a divorce from Pierro; to Alaska inmate Michael Bowlin; to Luna County inmate Karen Eaton; to the jury at her own trial, where she testified that defendant Bernie Smith killed Pierro; and in her affidavit in support of defendant's motion for a new trial. After hearing this evidence and reviewing all the evidence offered at defendant's trial, the trial court denied the motion for a new trial.

## I. Motion for New Trial.

■ The party moving for a new trial under Crim.P. Rule 45(c) on the basis of newly discovered evidence bears the burden of showing the trial court that the newly discovered evidence (1) will probably change the result if a new trial is granted; (2) was discovered since the trial; (3) could not have been discovered before the trial by the exercise of due diligence; (4) is

material; (5) is not merely cumulative; and (6) is not merely impeaching. *State v. Mabry,* 96 N.M. 317, 322, 630 P.2d 269, 274 (1981); *State v. Ramirez,* 79 N.M. 475, 477, 444 P.2d 986, 988 (1968).

█ Because the trial judge has observed the demeanor of the witnesses and has heard all the evidence, including that bearing upon the relationships of the witnesses with the defendant, the function of passing on motions for new trial belongs naturally and peculiarly to the trial court. *See State v. Romero,* 42 N.M. 364, 370, 78 P.2d 1112, 1116 (1938). This Court will not lightly interfere with the trial court's discretion, and absent a clear abuse of discretion we will not overturn the denial of a new trial. *Mabry,* 96 N.M. at 322, 630 P.2d at 274; *State v. Fuentes,* 67 N.M. 31, 33, 351 P.2d 209, 210 (1960).

The trial court here made findings on each of the six criteria, but we only reach the first. The trial court found that it was "questionable" whether defendant had carried his burden of proving that the new evidence would probably change the result if a new trial were granted. It commented that Wanda Smith's affidavit was so contradictory that it would be impossible to determine when she was telling the truth. In effect the trial court concluded that the new evidence was so subject to impeachment that a new jury, hearing it along with all the evidence offered at the first trial, would give Wanda's statements little weight and probably would not reach a different verdict.

█ This Court long has recognized that the "inherent improbab[ility]" of new evidence or recanted testimony is an important factor in determining whether a different result would be probable if a new trial were granted. *See, e.g., Romero,* 42 N.M. at 370–71, 78 P.2d at 1116. So are circumstances indicating the possibility of undue influence, collusion, or ulterior motives. *See, e.g., Fuentes,* 67 N.M. at 33, 351 P.2d at 210; *State v. Henneman,* 40 N.M. 166, 170–71, 56 P.2d 1130, 1133 (1936). *See generally State v. Stephens,* 99 N.M. 32, 37, 653 P.2d 863, 868 (1982).

█ Under the facts and the circumstances of this case, we cannot say that the trial court abused its discretion in finding that Wanda Smith's inconsistent and ultimately unbelievable new evidence probably would not cause a different result if a new trial were granted. The trial court therefore did not err in concluding that defendant had failed to offer newly discovered evidence warranting a new trial under Crim.P. Rule 45(c), and we affirm its denial of defendant's motion for a new trial.

## II. Statement Against Interest.

The defendant also challenges upon appeal the trial court's exclusion of testimony regarding statements made to Karen Eaton in the Luna County jail on March 23, 1983, prior to Wanda Smith's trial on murder charges but after Steve Watkins's death. The defense tendered Karen Eaton's testimony that Wanda told her that Ralph Pierro's death was accidental: Wanda and Ralph were engaged in a verbal argument but when Ralph grabbed Wanda, her son Steve hit Ralph and caused his fatal fall. Karen Eaton also testified that Wanda said she had told the same story to a male inmate in Alaska.

The defense offered Karen Eaton's testimony regarding Wanda Smith's out-of-court statements under the hearsay exception for statements against interest, Evid. Rule 804(b)(4). When the declarant is unavailable, the rule against hearsay does not exclude "a statement which ... at the time of its making ... so far tended to subject [the declarant] to ... criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." However, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Evid.R. 804(b)(4).

The trial court ruled Karen Eaton's testimony inadmissible on two grounds. First, Wanda's statement describing Ralph Pier-

ro's death as an accident caused by Steve Watkins did not, at the time of its making, so far subject *Wanda* to criminal liability that no reasonable person would have made it unless she believed it to be true; indeed, it tended to exculpate both Wanda and her then-husband, defendant. Second, if the statement were in fact against Wanda's penal interest, the defense failed to demonstrate corroborating circumstances clearly indicating its trustworthiness; the portion of Karen Eaton's testimony dealing with the similar Alaska statement had already been contradicted by witness Michael Bowlin.

■ The determination of the admissibility of statements under the exceptions to the hearsay rule rests within the sound discretion of the trial court. *State v. McGee*, 95 N.M. 317, 321, 621 P.2d 1129, 1133 (Ct.App.1980). Given that Wanda Smith had already been charged with first degree murder, her statement implicating herself but primarily Steve Watkins in Ralph Pierro's death may in fact have been self-serving and not a statement against her penal interest. *See McGee*, 95 N.M. at 320, 621 P.2d at 1133; *see also United States v. Riley*, 657 F.2d 1377, 1384 (8th Cir.1981), *cert. denied*, 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983). Furthermore, the failure of defendant's corroboration by Michael Bowlin, the circumstances under which the statement was made, the character of its recipient, and the questionable extent to which it was truly against Wanda Smith's penal interest, do not clearly indicate that the statement was trustworthy. *See State v. Anaya*, 89 N.M. 302, 304, 551 P.2d 992, 994 (Ct.App.1976); *see also United States v. Hoyos*, 573 F.2d 1111, 1115 (9th Cir.1978). The trial court did not abuse its discretion in excluding Karen Eaton's testimony.

### III. Evidence of "Threats."

Finally, the defendant challenges upon appeal the trial court's exclusion of "threats" made by Danny Watkins to Karen Eaton. After excluding her testimony regarding Wanda Smith's statement implicating Steve Watkins, the trial court excluded for lack of foundation Karen Eaton's testimony that Danny Watkins and Wanda's brother Jerry made a "threatening" visit to Karen in jail in order to prevent her from repeating Wanda's statement.

■ This Court will not consider arguments on this issue because it was not raised in defendant's docketing statement and may not be raised for the first time in his briefs. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 205 (Repl.Pamp. 1983); *State v. Hoxsie*, 101 N.M. 7, 9, 677 P.2d 620, 622 (1984).

In conclusion, the trial court acted within its discretion in denying defendant's Rule 45(c) motion for a new trial on the basis of newly discovered evidence and in excluding Karen Eaton's testimony regarding Wanda Smith's statement inculpating Steve Watkins in the killing of Ralph Pierro. Accordingly, defendant's conviction of first degree murder is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and FEDERICI, J. concur.

RIORDAN, C.J., not participating.

WALTERS, Justice, dissents.

WALTERS, Justice, dissenting.

I respectfully dissent.

At the September 5, 1984, motion hearing, Wanda testified that she had killed Ralph Pierro and that she had told Bernie Smith that she was the one who had killed Ralph Pierro. Her notarized statement averred that Bernie Smith was not involved nor present when she visited Pierro shortly before he was killed. Briefly, her affidavit disclosed that Ralph Pierro attempted forcibly to have sex with her; she got angry and pushed him. He fell, hitting his head on a rock planter, and was fatally injured. The affidavit stated that she had lied at her own trial because she was trying to protect her reputation. Additionally, she indicated she was not thinking clearly at that time, being distraught by her son Steve's recent

violent death. She concluded that she was now coming forward for her own peace of mind. Although the majority opinion indicates that unlikelihood of changing the result formed the basis of its ruling on a new trial, the court's order denying the motion reads:

[T]he Court having heard the testimony presented and considered the evidence admitted:

FINDS:

1. That the law of the case is *State v. Ramirez*, 79 N.M. 475, 444 P.2d 986, 1968.

2. That the defendant has failed to carry this burden of proof as to criteria 2 and 3 as set forth in *Ramirez* Supra, at page 477, 444 P.2d 986, to-wit: "It must have been discovered since trial" and "It must be such that it could not have been discovered before trial by the exercise of due diligence." The Court is of the opinion that the information contained in the affidavit of Wanda Smith was available to the defendant prior to trial.

3. It is questionable whether defendant carried his burden of proof with regard to criteria 1 and 6 of *Ramirez*, Supra, Page 477, 444 P.2d 986, to-wit: "It will probably change the result if a new trial is granted," and "It must not be merely impeachment and contradictory." The Court is of the opinion that the affidavit of Wanda Smith is so contradictory that it would be impossible to determine when she might be telling the truth.

4. The defendant did carry his burden of proof as to criteria 4 and 5 of *Ramirez*, Supra, at page 477, 444 P.2d 986, to-wit: "It must be material to the issue," and "It must not be merely cumulative."

The principal basis, then, was that the evidence was known to defendant Bernie Smith at the time of his trial and was not "new evidence" within the meaning of the requirements of NMSA 1978, Crim.P. Rule 45 (Repl.Pamp.1985). The other reasons given were "questionable."

It is settled that when a motion under Rule 45 is based upon newly discovered evidence, the movant must show that the evidence is such that: (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory. *See, e.g., State v. Volpato*, 102 N.M. 383, 696 P.2d 471 (1985); *Ramirez*. An order denying a new trial will not be overturned except for an abuse of discretion. *Id.* at 385, 696 P.2d at 473.

This question therefore is whether evidence that may have been imparted to defendant in some fashion prior to trial, but unavailable for use in the trial, becomes "newly discovered" when it subsequently becomes available. According to the new evidence, Bernie Smith allegedly had been told by Wanda prior to trial that she had killed Ralph Pierro. Wanda Smith, however, is the only other person still alive who was present, according to her testimony, at the time the event occurred. Her testimony was unavailable to defendant at defendant's trial because she pled her Fifth Amendment privilege. Bernie Smith could not have testified that Wanda Smith told him that she had killed Ralph Pierro because that would have been inadmissible hearsay. NMSA 1978, Evid.R. 802. It was an out-of-court statement that would have been offered to prove the truth of the matter contained in the statement: that Wanda (and consequently, not Bernie) had killed Ralph Pierro. It could not have been offered as a statement against interest by the declarant because it was offered to exculpate the accused and therefore required corroboration under Evidence Rule 804(B)(4). Bernie Smith could offer no corroboration. Consequently, under a careful analysis, it is clear that the evidence became available only when Wanda Smith decided to come forward and testify concerning an event about which she alone allegedly had personal knowledge.

Several New Mexico cases provide a foundation for such an analysis. In *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459,

463 (1942), we affirmed the denial of a new trial, but on grounds that the defendant knew of the evidence at trial *and* that "the reason given for not presenting such testimony [was] insufficient." As here, our holding in that case would suggest that a new trial is not automatically precluded because the defendant may have technically "known" of the evidence prior to trial by reason of having been so told but is powerless to present such inadmissible evidence.

In our most recent case on the subject, *State v. Sena*, 103 N.M. 312, 706 P.2d 854 (1985), the denial of a new trial was sustained because defendant and other witnesses known to defendant at the time of trial could have rebutted allegedly perjured, and later recanted, testimony, and they were not called to testify.

In *Volpato*, however, we reversed the denial of a new trial on facts similar to the instant case. There, the newly discovered evidence came in the form of an affidavit of one who had not been called as a witness at trial because of the intentionally deceptive version of events she gave to investigators. She had determined not to become involved but, after defendant had been convicted, she came forward "as a matter of conscience" and gave a description of what she had witnessed. Her testimony corroborated, in detail, the defendant's previously uncorroborated testimony. In that case we rejected the State's argument that the evidence was not new merely because it was known "in broad outline" to the defendant.

Conversely, but not inconsistently, in *State v. Mabry*, 96 N.M. 317, 630 P.2d 269 (1981), we affirmed denial of a new trial, noting that defendant could have offered testimony, based upon first-hand knowledge, of alleged sexual abuse of the accused by the victim, but did not do so.

One case, *State v. Valdez*, 95 N.M. 70, 618 P.2d 1234 (1980), appears discordant with the others. In that case the defendant was privy to a pre-trial confession of another to the crime of which Valdez was accused. The Court, apparently without fully analyzing the inadmissibility of that hearsay evidence, held that "[t]he defendant took the witness stand and testified in his own behalf, but made no reference to [the] alleged confession." *Id.* at 72, 618 P.2d at 1236. To the extent that *Valdez* implies that defendant is denied the possibility of a new trial because of his failure to proffer clearly inadmissible testimony, it should be expressly overruled.

A survey of other jurisdictions reveals a split of authority on the meaning of "unavailability," with the federal courts, principally, imposing a very narrow construction upon it. *See Jones v. Scurr*, 316 N.W.2d 905 (Iowa 1982), for a cross-jurisdictional survey of holdings. The desire for finality of litigation usually has been the reason given for refusing to equate "newly available" and "newly discovered" evidence. When we look to the purpose of the provision allowing new trials on the basis of newly discovered evidence, however, it is clear that

> [t]he touchstones that appear to govern are two: the first being the showing of *diligence* as an excuse for not having been able to present the evidence at the first trial; and the second being evidence that will convince the trier of facts that a different verdict will probably result.... [A]lthough [the evidence is] not newly discovered evidence in the usual sense of the term, its *availability* is newly discovered, to which the same principle applies....

*State v. Gerdes*, 258 N.W.2d 839, 843 (S.D. 1977) (emphasis in original).

Therefore, newly *available* evidence meets the requirement that it be "discovered" since trial. The trial court should be reversed on that issue because the denial was primarily based upon the judge's view that the evidence was not "newly discovered." I do not disregard the requirement that diligence in attempting to bring forth the evidence at trial must be observed. Trial counsel of course must do all possible to produce the evidence at the original trial, but that does not include unethically or improperly attempting to introduce inadmissible evidence.

Secondly, although the trial judge expressly decided that the evidence was not newly discovered, and additionally stated in the denial order that it was "questionable" whether the new testimony would change the result should a new trial be granted because the "affidavit of Wanda Smith is so contradictory that it would be impossible to determine when she might be telling the truth,"

> [i]t is not a question of which story the judge himself believed to be true, but, rather, whether the defendant should have the right to have all of the testimony submitted to a jury in order that the jury might then determine his guilt or innocence.... [A]nother jury would have the benefit of all the facts in order to arrive at a fair decision.

*State v. Fuentes*, 67 N.M. 31, 32, 351 P.2d 209, 210 (1960). It is possible, of course, that a new jury would discredit Wanda Smith's evidence. On the other hand, if the jury—the factfinder—should believe the testimony contained in Wanda's affidavit, defendant must then be acquitted of murder because her testimony is consistent only with defendant's innocence. *Compare Ramirez*, (where a new jury could believe the new testimony but still find the defendant guilty; the new evidence merely placed two strangers near the scene of the crime and the witness had no first-hand knowledge of the actual murder).

I would remand the case with directions to set aside the conviction and grant a new trial to defendant.