This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                        **NO. 28,707**

**GREGORY BOSTON,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

Defendant appeals his conviction of two counts of armed robbery in violation of NMSA 1978, Section 30-16-2 (1973). Defendant also appeals the enhancement of his sentence pursuant to NMSA 1978, Section 31-18-16(A) (1993) (increasing sentence when a firearm is used in the commission of a crime). We affirm.

**BACKGROUND**

At approximately 10:30 p.m. on the night of July 26, 2007, Shiloh Johnson and Justin Manasco (collectively, "Victims") departed Kelly's Bar and Grill in Clovis, New Mexico. In the parking lot of the bar, Victims were confronted by three men, two Caucasians and an African-American, who used a machine-gun and a four inch retractable-blade knife to rob them of twenty-nine dollars. During the robbery, the African-American man wielded the gun, and one of the Caucasian men brandished the knife.

Officers from the Clovis Police Department arrived on the scene shortly after the robbery and obtained descriptions of the suspects from Victims. Victims described the African-American man as roughly five-foot six inches tall, weighing approximately 130 to 140 pounds, had a number of gold teeth, and was wearing a black "do-rag"[1] on his head. The Caucasian man who brandished the knife was

_____

[1] As described by Victims, a "do-rag" is a type of head covering. A piece of cloth, often sheer material, is wrapped around one's head, and is secured to the head

described as roughly six-foot six inches tall, weighing approximately 240 to 250 pounds, had short blond hair, a tattoo (which appeared to be a name) on the left side of his neck, and had a red rag tied around his arm. Little was said about the third man involved in the crime and it appears that no charges were ever brought against a third individual.

In the days following the robbery, Defendant (who is African-American) and Mr. Donald Davis (who is Caucasian), along with two others, attracted the attention of the Clovis Police Department after the group caused a disturbance in a Dillard's department store. The officer dispatched to Dillard's observed that the physical attributes of Defendant and Mr. Davis matched the descriptions of the suspects of the robbery provided by Victims. Defendant, Mr. Davis, and the other two individuals were temporarily detained to permit the police to obtain their identification.

Several days later, the Clovis Police Department presented Victims with photographic arrays of potential suspects of the robbery which included photographs of Defendant and Mr. Davis. One of the arrays consisted of a photograph of Defendant's face alongside five other African-American men's faces. The other array consisted of a photograph of Mr. Davis's face amongst five other Caucasian men's

---

by tying the cloth in a knot.

faces. A third array of six Caucasian men's faces was shown to Victims which presumably pertained to the third and unidentified suspect. Victims were told that the suspects may or may not be included in the photographic arrays.

When examining the arrays, both Victims definitively identified Mr. Davis as the large Caucasian man involved in the robbery who had brandished the knife. Victims expressed less certainty, however, that the African-American man who participated in the robbery was in the array of African-American men. Although Mr. Johnson selected Defendant when reviewing the array of African-American men, he admitted during cross-examination that he was not entirely sure that the African-American man he selected (Defendant) was the individual who had robbed him. Similarly, when Mr. Manasco reviewed the array of African-American men, he was unable to definitively conclude that Defendant was the African-American man involved in the robbery. Rather, Mr. Manasco was only able to conclude that Defendant and another man in the array closely resembled the suspect. Despite Victims' uncertainty while reviewing the photographic arrays of the identity of the African-American suspect, additional evidence of the suspects' identities was presented at Defendant's trial.

Prior to trial, Defendant filed a motion to sever his trial from Mr. Davis's, asserting that joinder of the trials would be prejudicial to Defendant. Defendant

4

argued that, in light of Victims' certainty (when viewing the photographic arrays) that Mr. Davis was the Caucasian man involved in the robbery, and their admitted uncertainty that Defendant was the African-American man involved in the robbery, a joint trial was improper. Defendant asserted that the jury might erroneously infer that Defendant was the African-American man involved in the robbery simply because he is African-American and was in Mr. Davis's company the day after the robbery. The district court denied Defendant's motion to sever, and the joint trial proceeded.

At the close of trial, the jury reached a verdict and found Defendant guilty of two counts of armed robbery in violation of Section 30-16-2. Shortly thereafter, Defendant submitted a motion for a new trial. Attached to the motion was a hand-written letter to the district court from co-defendant, Mr. Davis, exonerating Defendant. Mr. Davis alleged that Defendant played no part in the robbery. Rather, Mr. Davis claimed that he and two other individuals whose names he did not know were solely responsible for the robberies.

After a hearing on the motion, the district court denied Defendant's motion for a new trial and also denied his subsequent motion for reconsideration. On May 7, 2008, Defendant was sentenced. Because the jury found that a firearm was used during the course of the robbery, the district court enhanced Defendant's sentence by one year for each count pursuant to the mandatory firearm sentencing enhancement

5

provided under Section 31-18-16(A). Defendant filed a timely notice of appeal. Additional facts are incorporated in the following discussion as necessary.

On appeal, Defendant alleges that (1) the district court erred when it denied Defendant's motion for a new trial based on newly-discovered evidence, (2) the district court erred when it denied Defendant's motion to sever his trial from Mr. Davis's, (3) there was insufficient evidence presented at Defendant's trial to convict him of any crime, (4) there was insufficient evidence to support the district court's decision to apply the firearm enhancement when the Defendant was sentenced, and (5) the cumulative errors which occurred at Defendant's trial amount to fundamental error requiring reversal of his convictions.

**DISCUSSION**

**Defendant's Motion for a New Trial Based on Newly-Discovered Evidence**

Defendant's primary argument on appeal is that the district court erred in denying his motion for a new trial based on newly-discovered evidence pursuant to Rule 5-614 NMRA. "A motion for a new trial on the basis of newly-discovered evidence is not looked upon favorably, is not to be encouraged and should be examined with caution." *State v. Shirley*, 103 N.M. 731, 733, 713 P.2d 1, 3 (Ct. App. 1985). "[T]he function of passing upon motions for new trial on newly[-]discovered evidence belongs naturally and peculiarly, although not exclusively, to the trial court."

*State v. Garcia*, 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638 (internal quotation marks and citation omitted).  Accordingly, "[t]he discretion of a trial court is not to be lightly interfered with as to the granting of a motion for new trial." *Id.* (internal quotation marks and citation omitted) (alteration in original).  As a result, "we will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *Id.*  "Unless the district court's decision to deny a motion for a new trial was arbitrary, capricious, or beyond reason, we will not reverse it on appeal." *Talbott v. Roswell Hosp. Corp.*, 2008-NMCA-114, ¶ 29, 144 N.M. 753, 192 P.3d 267 (internal quotation marks and citation omitted), *cert. granted*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267.

In *Garcia*, our Supreme Court held that

> [a] motion for a new trial on grounds of newly-discovered evidence will not be granted unless the newly-discovered evidence fulfills all of the following requirements:
> 1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory.

*Garcia*, 2005-NMSC-038, ¶ 8 (internal quotation marks and citation omitted). Furthermore, the defendant bears the burden of proving that the newly-discovered evidence satisfies all six of these criteria, *State v. Desnoyers*, 2002-NMSC-031, ¶ 26,

7

132 N.M. 756, 55 P.3d 968 ("For a motion for a new trial to be granted on the basis of newly-discovered evidence, [the d]efendant had the burden of proving that the evidence met all . . . six requirements."), *abrogated on other grounds by State v. Forbes*, 2005-NMSC-027, ¶ 6, 138 N.M. 264, 119 P.3d 144, and his failure to satisfy any one of these six criteria disposes of his motion. *See State v. Smith*, 104 N.M. 329, 333, 721 P.2d 397, 401 (1986) (affirming the district court's denial of a motion for a new trial based on newly-acquired evidence and noting that "[t]he trial court here made findings on each of the six criteria, but we only reach the first") *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 779 P.2d 99 (1989).

Because the contents of co-defendant Mr. Davis's letter form the basis of our analysis, we review those facts in more detail. Mr. Davis's letter states that he returned to his step-father's home in the evening on July 26, 2007, where he anticipated meeting Defendant. Defendant was not at his step-father's house. Instead, a Mexican man and an African-American man whose names Mr. Davis does not know were present. Mr. Davis and these men began using cocaine and marijuana together. Mr. Davis had not eaten for two days and he asked his companions where he might obtain food. They told him to follow them and the three men left Mr. Davis's step-father's house. Mr. Davis believed his companions were taking him to one of their houses to eat. Instead, they walked to Kelly's Bar and Grill. While walking down the

street, Mr. Davis observed that the African-American man was playing with a squirt gun he had in his possession. While standing behind Kelly's, Mr. Davis's companions saw Victims. The African-American man instructed Mr. Davis to obtain cigarettes from them. While Mr. Davis was speaking with Victims, his companions (to Mr. Davis's surprise) initiated the robbery. During the robbery, Mr. Davis observed Mr. Manasco moving towards his truck. Mr. Davis thought Mr. Manasco might be reaching for a weapon and, in a moment of panic, pulled out his knife to stop Mr. Manasco. After obtaining twenty-nine dollars from Victims, Mr. Davis insisted that he and his companions leave the area. They did, and the three men divided the stolen money amongst themselves. Mr. Davis used the ten dollars he received to buy food. He then returned to his step-father's house where he finally encountered Defendant who was watching television. The letter ends with Mr. Davis writing that Defendant was innocent and should not go to jail for something he did not do.

The district court denied Defendant's motion citing two grounds as the basis for its decision. First, the district court observed that the jury heard substantial evidence, including an in-court identification by Victims that Defendant was one of the participants in the robbery, which would permit them to conclude that Defendant was guilty of the crimes charged. Accordingly, the district court saw no reason to upset the jury's verdict, Mr. Davis's letter notwithstanding. Second, the district court

questioned the credibility of Mr. Davis's letter. The district court was specifically critical of the fact that Mr. Davis could not provide names for the two individuals he claimed were involved in the robbery, but rather, could only describe them as the "black" man and the Mexican man. Both of the district court's findings speak directly to the first factor it was required to consider when evaluating Defendant's motion: whether the new evidence would change the result of a new trial if Defendant was granted one. The district court found that Mr. Davis's letter, a letter of questionable veracity, would not change the outcome of a new trial in light of the multitude of evidence presented at Defendant's trial of his guilt. We have previously observed that "[t]he question of whether the evidence produced in support of [a motion for a new trial based on newly-acquired evidence] will probably change the result is one peculiarly addressed to the discretion of the trial court." *Shirley*, 103 N.M. at 733, 713 P.2d at 3. In this case, we find no error in the district court's ruling. Further, as we discuss below, existing case law supports the reasoning employed by the district court in reaching its decision.

In *State v. Ramirez*, 79 N.M. 475, 444 P.2d 986 (1968), *Smith*, and *Desnoyers*, our Supreme Court affirmed denials of requests for new trials based on newly-discovered evidence. In all three cases, our Supreme Court affirmed the district courts' conclusions that the legitimacy of the newly-acquired evidence was

10

questionable and that it was unlikely to persuade any new juries or alter the outcome of any new trials. These cases, discussed in greater detail below, illustrate that the district court in this case similarly did not abuse its discretion in denying Defendant's motion given the incredibility of Mr. Davis's letter and the strength of the evidence presented to the jury of Defendant's guilt.

The defendant in *Ramirez* was convicted of first-degree murder. 79 N.M. at 476, 444 P.2d at 987. The request for a new trial was based on testimony of a witness identified after his trial. *Id.* at 477, 444 P.2d at 988. The district court denied the defendant's motion finding that the witness's testimony "was confused and her statements so inconclusive that he thought little or no weight would be given to her testimony by a jury." *Id.* at 478, 444 P.2d at 989. Our Supreme Court affirmed, observing that "[f]rom our examination of the testimony by the witness, it does not appear that the newly[-]discovered evidence would probably change the result if a new trial were granted." *Id.*

In *Smith*, both the defendant and his ex-wife were charged with the crime for which the defendant was ultimately convicted of first-degree murder for the death of the ex-wife's first husband. 104 N.M. at 331-32, 721 P.2d at 399-400. The ex-wife was tried separately and several months before the defendant. *Id.* She was convicted of involuntary manslaughter. *Id.* at 332, 721 P.2d at 400. However, after the

defendant was convicted of first-degree murder at his subsequent trial, the ex-wife's conviction was reversed and retrial of the ex-wife for homicide was precluded. *Id.* After retrial was precluded, she admitted that she was solely responsible for the crime and submitted an affidavit exonerating the defendant which served as the foundation for the defendant's motion for a new trial. *Id.* at 332-33, 721 P.2d at 400-01. The district court denied the motion observing that "the new evidence was so subject to impeachment that a new jury, hearing it along with all the evidence offered at the first trial, would give [the ex-wife's] statements little weight and probably would not reach a different verdict." *Id.* at 333, 721 P.2d at 401. Our Supreme Court affirmed and concluded that "[u]nder the facts and the circumstances of this case, we cannot say that the trial court abused its discretion in finding that [the defendant's ex-wife's] inconsistent and ultimately unbelievable new evidence probably would not cause a different result if a new trial were granted." *Id.*

During the defendant's trial in *Desnoyers*, the State submitted a variety of evidence demonstrating the defendant's participation in the rape and murder of a female college student including the testimony of an inmate who was incarcerated with the defendant while the defendant awaited trial. 2002-NMSC-031, ¶ 5. The State's inmate-witness testified that the defendant made incriminating remarks during several conversations they had. *Id.* The defendant was convicted, amongst other

12

things, of first-degree murder. *Id.* ¶ 1. The defendant's motion for a new trial was based on the testimony of yet another inmate whose testimony allegedly undermined the testimony of the State's inmate-witness. *Id.* ¶ 27. In addition, the defendant also called and elicited the testimony of two police officers. *Id.* The district court denied the defendant's motion, finding that even if the State did submit the testimony of its inmate-witness, there was ample evidence to support the defendant's conviction. *Id.* ¶ 29. Furthermore, the district court noted that the testimony of the officers the defendant called contradicted the testimony of his inmate-witness and, thus, called into question the credibility of the defendant's inmate-witness. *Id.* ¶ 27. Our Supreme Court affirmed, holding (in part) that "[t]he [district] court correctly determined that the testimony of [the defendant's inmate-witness] would not have changed the result if a new trial had been granted[.]" *Id.* ¶ 29.

The reasoning set forth in *Ramirez*, *Smith*, and *Desnoyers* establishes it is not an abuse of discretion for a district court to deny a motion for a new trial based on newly-acquired evidence where that new evidence is incredible and there is substantial evidence supporting the jury's verdict. In such circumstances, the trial court may conclude that the outcome of a new trial would not be altered, and thus, the defendant is not eligible for a new trial.

13

In this case, the district court questioned the credibility of Mr. Davis's letter and compared it with the evidence presented at trial. We have no basis for questioning the district court's determination that the letter is not believable, and it is also inconsistent with the testimony heard by the jury. That Mr. Davis was an inadvertent participant in an armed robbery with two men whose names he does not know, participated in that robbery only to the extent that he was forced to brandish a knife to defend himself against a hostile robbery victim, and found himself caught in the middle of these circumstances merely because he was hungry and had not eaten in two days has the distinct air of incredulity.

Further, Mr. Davis's letter contrasts markedly with the evidence submitted at Defendant's and Mr. Davis's trial of Defendant's guilt. Victims provided in-court identifications that Defendant was the African-American man who employed a gun to rob them. Both Victims indicated, when reviewing the photographic arrays of the potential African-American suspects, that Defendant closely resembled the man who robbed them. A knife identical to the one used during the robbery was found in the possession of Mr. Davis, who was in Defendant's company the day immediately following the robbery. Defendant's and Mr. Davis's physical attributes match the description of the perpetrators provided by Victims, and Defendant and Mr. Davis were wearing similar attire the day after the robbery. A clerk employed at an Allsup's

14

gas station near Kelly's Bar and Grill testified that she saw men with physical features similar to Defendant and Mr. Davis in the vicinity of the scene of the crime on the night of the crime. Mr. Davis's step-father's testimony contradicted Defendant's statements regarding his whereabouts on the night of the robbery.

Accordingly, and in light of our discussion of *Ramirez*, *Smith*, and *Desnoyers*, we hold that the district court did not abuse its discretion in concluding that the evidence Defendant submitted in support of his motion for a new trial (Mr. Davis's letter) was unbelievable and would not alter the outcome of a new trial if one were granted to Defendant. Defendant has failed to fulfill the first of the six elements he is required to prove in order to demonstrate eligibility for a new trial under Rule 5-614. The district court's ruling is affirmed. Although the State raises additional arguments challenging Defendant's ability to satisfy the other five factors required to demonstrate eligibility for a new trial under Rule 5-614, we need not address them. As noted, failure to fulfill any one of the factors is dispositive. *See Smith*, 104 N.M. at 333, 721 P.2d at 401 (affirming the district court's denial of a motion for a new trial based on newly-acquired evidence and noting that "[t]he trial court here made findings on each of the six criteria, but we only reach the first").

**Defendant's Motion to Sever**

Defendant next contends, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), that the district court erred in denying his motion to sever his trial from Mr. Davis's pursuant to Rule 5-203 NMRA. That provision states in pertinent part that "[i]f it appears that a defendant . . . is prejudiced by a joinder of . . . defendants . . . the court may order separate trials of offenses . . . or provide whatever other relief justice requires." Rule 5-203(C). Whether Defendant was entitled to a separate trial is a matter addressed to and resolved by the sound discretion of the district court. *See State v. White*, 83 N.M. 354, 355, 491 P.2d 1165, 1166 (Ct. App. 1971).

A motion for severance under Rule 5-203 requires Defendant to demonstrate prejudice. As proof that he was prejudiced by a joint trial, Defendant claims that "when [he was] tried alongside [Mr. Davis,] who [(unlike Defendant)] had been positively identified [by Victims in their review of the photographic arrays,] Defendant became the victim of 'guilt by association.'" Defendant concedes that "the holding of [the one case Defendant's counsel located which deals specifically with the issue raised by Defendant] is contrary to Defendant's current assertion." We agree.

In *White*, we held that a criminal defendant was not prejudiced by the district court's decision to try the defendant jointly with his co-defendant despite the fact that

16

"the evidence of identification of [the] co-defendant was more substantial than was the evidence of [] identification [of the defendant]." *White*, 83 N.M. at 355, 491 P.2d at 1166. *White* is directly on point and contradicts Defendant's contention that he was prejudiced based on the argument submitted in his brief, i.e., that he was the victim of guilt by association given that Victims were confident when viewing the photographic arrays that Mr. Davis was one of the culprits but less certain Defendant was one of the culprits.

In the alternative, Defendant argues that because Rule 5-203 requires only that he prove the "appearance of prejudice" he need not show "concrete assertions of prejudice." We are equally unpersuaded by this argument. Defendant has provided no authority for his contention that "the very real possibility of spillover prejudice to Defendant" is sufficient to warrant reversal. *See State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) (noting that the court will not review issues raised in appellate briefs that are unsupported by cited authority). We hold that the district court did not abuse its discretion in denying Defendant's motion to sever his trial from Mr. Davis's.

**Sufficiency of the Evidence Supporting Defendant's Convictions**

We next address Defendant's contention that there was insufficient evidence presented at his trial to convict him of any crime. "[T]he test to determine the

17

sufficiency of evidence . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). The evidence is reviewed "in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* We do not "weigh the evidence and may not substitute [our] judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* "Where . . . a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal." *Id.*

Defendant was convicted of two counts (one for each of the two Victims) of armed robbery in violation of Section 30-16-2. The jury was instructed that, to find Defendant guilty of the violations of Section 30-16-2, they were required to find the following:

> 1. [D]efendant took and carried away money from [Victims] or from [their] immediate control intending to permanently deprive [them] of the money;
> 2. [D]efendant was armed with a gun;
> 3. [D]efendant took the money by threatened force or violence; and
> 4. This happened in New Mexico on or about the 26th day of July, 2007.

Defendant does not challenge the propriety of these instructions. He instead contends that there was insufficient evidence presented which would permit the jury to find he committed all of the elements of this crime. We cannot agree.

Ample evidence was provided at Defendant's trial which permitted the jury to find Defendant carried out each element required to convict him of two counts of violating Section 30-16-2. Victims provided in-court identifications of the perpetrators, stating that Defendant was the African-American man who confronted them with a gun, demanded their money by threat of force, received their money, and fled with his companions. This evidence alone is sufficient to support Defendant's convictions. *See State v. Hunter*, 37 N.M. 382, 384, 24 P.2d 251, 252 (1933) (reviewing appellant's claim that there was insufficient evidence to sustain his conviction and holding that "the testimony of a single witness may legally suffice as evidence upon which the jury may found a verdict of guilt"). Nevertheless, the jury was provided a multitude of additional evidence from which a jury could conclude that Defendant participated in the robbery.

In addition to the in-court identifications by Victims at trial, upon review of the photographic array of potential African-American suspects, both of them indicated that Defendant closely resembled the perpetrator. The officer who apprehended Defendant and Mr. Davis outside of Dillard's (the day after the robbery) testified that

the physical characteristics of Defendant and Mr. Davis (including their height, weight, Defendant's gold teeth, and Mr. Davis's neck tattoo) precisely matched the descriptions provided by Victims, and Defendant and Mr. Davis were dressed in attire similar to what Victims claimed the perpetrators were wearing on the night of the robbery. The officer stated that Defendant had a black "do-rag" on his head and, Mr. Davis had a red bandana tied around his arm. The officer further testified that Mr. Davis had in his possession a four-inch retractable-blade knife. Another officer who assisted in the temporary detention of Defendant, Mr. Davis, and their associates photographed that knife. At trial, Mr. Manasco testified that this knife was identical to the one used by the Caucasian man during the robbery. A clerk employed at an Allsup's gas station near Kelly's Bar and Grill was called as a witness by the State and testified that she saw a group of suspicious-looking individuals including a large and tall Caucasian man and a shorter African-American man in the parking lot of her place of employment around the time of the robbery. A detective from the Clovis Police Department testified that he interviewed Defendant and Mr. Davis several days after they were temporarily detained outside of Dillard's. The detective asked Defendant and Mr. Davis about their whereabouts on the evening of the robbery and received an account that was inconsistent with the testimony of Mr. Davis's step-father who testified as an alibi witness on Mr. Davis's behalf during Defendant and Mr. Davis's

joint trial. The detective testified that both Defendant and Mr. Davis told him that they were at Mr. Davis's step-father's home watching a film on the night of the robbery. Both also claimed that Mr. Davis had been out with his step-father earlier in the evening and arrived at his step-father's house at roughly 10:00 p.m. Mr. Davis's step-father subsequently testified, on the other hand, that he and Mr. Davis returned to his home around 11:30 p.m. and that Defendant was never in his house that evening.

Based on the foregoing, we hold that a rational jury could have found, beyond a reasonable doubt, the essential facts required to convict Defendant of two counts of violating Section 30-16-2. *See State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994) (instructing that there is sufficient evidence to support a conviction where "the evidence . . . could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt").

**The Firearm Enhancement**

Defendant challenges the application of the firearm enhancement provided in Section 31-18-16(A) to his sentence. Defendant first argues that there was insufficient evidence presented at trial to prove that he was the individual involved in the robbery, and thus, there is no basis to conclude that he possessed a firearm during the commission of that robbery. We addressed and resolved this contention—there was

21

sufficient evidence presented to the jury to sustain their finding that Defendant did commit the robbery—in the preceding section of this opinion.

Next, Defendant claims that the State failed to establish a prima facie case that a firearm was used during the course of the crime and that this was a prerequisite to allowing the jury to render a decision on whether a firearm was employed during the commission of the crime. While Defendant correctly observes that Section 31-18-16(C) required the State to establish a prima facie case, *see* Section 31-18-16(C) ("If the case is tried before a jury and *if a prima facie case has been established* showing that a firearm was used in the commission of the offense, the court shall submit the issue to the jury by special interrogatory.") (emphasis added), Defendant's assertion that the State failed to prove a prima facie case is erroneous. The State elicited testimony from Victims that Defendant pointed a gun at them during the course of the robbery. This testimony satisfied the State's burden. *See Goodman v. Brock*, 83 N.M. 789, 792-93, 498 P.2d 676, 679-80 (1972) (defining prima facie showing as the submission of "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted"). Defendant also asserts that there was insufficient evidence to support the jury's conclusion that a firearm was used in the course of the robbery. This argument is also erroneous. As we have noted, Victims testified they were robbed at gunpoint. Thus, a rational jury could have found, beyond

a reasonable doubt, that a firearm was used during the robbery. *See Sanders*, 117 N.M. at 456, 872 P.2d at 874 (instructing that there is sufficient evidence to support a conviction where "the evidence . . . could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt").

**Cumulative Error**

Defendant's final argument on appeal is that the cumulative errors committed by the district court—the denial of Defendant's motion for a new trial and his motion to sever—constituted fundamental error requiring reversal of Defendant's convictions. Because we hold that the district court did not err in denying the motion to sever and for a new trial, we affirm Defendant's convictions.

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
                                              **LINDA M. VANZI, Judge**

**WE CONCUR:**

23

_____
**CYNTHIA A. FRY, Chief Judge**


_____
**ROBERT E. ROBLES, Judge**

24